UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ELISABETH OLIVIERI,<br><br>            Plaintiff,<br><br>    v.<br><br>NANCY A BERRYHILL, Deputy Commissioner of Social Security for Operations,<br><br>            Defendant. | CASE NO. 2:18-CV-00127-DWC<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff Elisabeth Olivieri filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 5.

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred when she failed to properly discount medical opinion evidence from Dr. Mark Magdaleno, M.D. Had the ALJ properly considered Dr. Magdaleno's opinion, the residual functional

capacity ("RFC") may have included additional limitations. The ALJ may have also changed the weight she gave to medical opinion evidence from Dr. Albert Hattem, M.D., with proper consideration of Dr. Magdaleno's opinion. The ALJ's error is therefore not harmless, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Deputy Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Order.

## FACTUAL AND PROCEDURAL HISTORY

On March 21, 2014, Plaintiff filed applications for SSI and DIB, alleging disability as of June 21, 2011. *See* Dkt. 8, Administrative Record ("AR") 18. The applications were denied upon initial administrative review and on reconsideration. *See* AR 18. ALJ Stephanie Martz held a hearing on December 15, 2015. AR 38-79. In a decision dated April 21, 2016, the ALJ found Plaintiff to be not disabled. AR 15-37. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. *See* AR 1-6; 20 C.F.R. § 404.981, § 416.1481.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by: (1) improperly assessing medical opinion evidence, thereby resulting in an inaccurate RFC; and (2) finding Plaintiff had a severe impairment of substance abuse disorder at Step Two of the sequential evaluation process. Dkt. 10, pp. 3-11. Plaintiff requests the Court remand for an award of benefits as a result of these errors. *Id.* at 11.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by

substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

**I.      Whether the ALJ properly assessed the medical opinion evidence.**

Plaintiff argues the ALJ improperly assessed her RFC in light of medical opinion evidence from Drs. Wayne Dees, Psy.D., Xandra Rarden, M.D., Mark Magdaleno, M.D., and Albert Hattem, M.D. Dkt. 10, pp. 5-11.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

A.      Mental Limitations

Plaintiff first argues the RFC should contain greater mental limitations due to opinion evidence from Drs. Dees and Rarden. Dkt. 10, pp. 5-9.

1.      *Dr. Dees*

On January 8, 2014, Dr. Dees conducted a psychological/psychiatric evaluation of Plaintiff. AR 387-96. As part of his evaluation, Dr. Dees conducted a clinical interview and

mental status examination of Plaintiff. AR 387-88, 390-91. Dr. Dees found Plaintiff moderately limited in her ability to adapt to changes in a routine work setting, communicate and perform effectively in a work setting, and set realistic goals and plan independently. AR 389-90. In addition, Dr. Dees opined Plaintiff was markedly limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision. AR 389. Dr. Dees also determined Plaintiff had a marked limitation in her ability to maintain appropriate behavior in a work setting. AR 390. Lastly, Dr. Dees found Plaintiff severely limited in her ability to complete a normal work day and work week without interruptions from psychologically based symptoms. AR 390.

The ALJ discussed Dr. Dees' findings and gave his opinion "little weight," stating:

> Such extreme limitations are not supported by the record or Dr. Dee's [sic] own mental status examinations. Indeed, during such an examination, the claimant's appearance was within normal limits, her thoughts were logical and linear, she was friendly and cooperative, and she was fully oriented with memory within normal limits. Dr. Dees did note that the claimant was depressed, but this observation alone does not explain the ratings he assessed, especially given all of his other observations.

AR 29 (internal citations omitted).

One reason the ALJ gave for discounting Dr. Dees' opinion was because Dr. Dees' "extreme limitations" were not supported by his own mental status examination. AR 29. An ALJ may reject an opinion that is "inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216 (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)). Here, the ALJ accurately summarized the findings from the mental status examination and explained how these findings – which were largely normal – did not support Dr. Dees' opined limitations. *See* AR 29; *see also* AR 390-91 (mental status examination). As such, the ALJ reasonably determined Dr. Dees' opinion was not supported by his own mental status examination, and this was a specific,

legitimate reason to discount this opinion. *See Bayliss*, 427 F.3d at 1216 (upholding an ALJ's rejection of a physician's findings where the physician's "other recorded observations and opinions" contradicted his opinion about Plaintiff's abilities); *see also Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (citation omitted) ("If the evidence admits of more than one rational interpretation," the court must uphold the ALJ's decision).

While the ALJ also discounted Dr. Dees' opinion for being unsupported by the medical record as a whole, the Court need not assess whether this reason was proper, as any error would be harmless. *See Presley-Carrillo v. Berryhill*, 692 Fed. Appx. 941, 944-45 (9th Cir. 2017) (citing *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162) (noting that although an ALJ erred with regard to one reason he gave to discount a medical opinion, "this error was harmless because the ALJ gave a reason supported by the record" to discount the opinion). Accordingly, the ALJ need not re-evaluate Dr. Dees' opinion on remand.

2. *Dr. Rarden and Mr. Grills*

Plaintiff asserts the ALJ improperly assessed her RFC in light of a medical report from November 12, 2014, which Plaintiff maintains was written by her treating physician, Dr. Rarden. Dkt. 10, pp. 6-9 (citing AR 505-08).

As an initial matter, the Court notes the report Plaintiff cites is actually an "Outpatient Psychiatric Progress Note," which contains treatment notes from a November 12, 2014 appointment with Mr. Paul Grills, RN, ARNP, MHP. *See* AR 505 (annotation stating Plaintiff's exam was "[w]ith Grills, Paul"), 508 (Paul Grills' signature as report author). Although the treatment notes mention Dr. Rarden as Plaintiff's primary care physician, the report shows Mr. Grills – not Dr. Rarden – conducted the examination and drafted this report. *See* AR 506-08. The Court therefore analyzes Plaintiff's argument as referring to Mr. Grills and not Dr. Rarden.

An ALJ "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). However, where a report does not assign any specific limitations or opinions regarding a claimant's ability to work, the ALJ need not provide reasons for rejecting the report because the ALJ is not rejecting any of the report's conclusions. *Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010); *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

Furthermore, harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-19 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

In this case, Plaintiff argues the ALJ erred by failing to properly consider the November 12, 2014 report. Dkt. 10, pp. 7-9. Yet a review of this report reveals that it contains no functional limitations. *See* AR 505-08. Rather, this report primarily contains treatment notes from Plaintiff's appointment, including descriptions of Plaintiff's life happenings, moods, medical history, and medications. *See* AR 505-07. In addition, while the treatment note contains a mental status examination Mr. Grills conducted, Mr. Grills did not state the mental status examination's findings translated into any functional limitations. *See* AR 506-07. Therefore, even if the ALJ erred by failing to discuss this treatment note, any error would be harmless. *See Molina*, 674 F.3d

at 1115 (an error is harmless if it "did not alter the ALJ's decision"); *see also Morgan*, 169 F.3d at 601 (ALJ permissibly rejected an opinion that contained only symptoms because it did not state how the symptoms translated into functional limitations).

Plaintiff also argues the RFC should have contained greater restrictions because of a Global Assessment of Functioning ("GAF") score contained in the November 12, 2014 report. Dkt. 10, pp. 8-9. "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). While a GAF score may be a "useful measurement," a GAF score "standing alone do[es] not control determinations of whether a person's mental impairments rise to the level of a disability[.]" *Garrison v. Colvin*, 759 F.3d 995, 1003 (9th Cir. 2014); *see also Hughes v. Colvin*, 599 Fed. Appx. 765, 766 (9th Cir. 2015) (noting GAF scores "do[] not have any direct correlative work-related or functional limitations.").

Here, the November 12, 2014 treatment note contains a GAF score of 39. AR 507. In his decision, the ALJ noted there were GAF scores throughout the record, but discounted their weight:

> These scores denote that the claimant does suffer from a manifested mental disorder, but the record as a whole contradicts the GAF scores regarding the claimant's ability to function in occupational and social settings. Given that a GAF score only shows the claimant's mentality at a specific time, I give little weight to these scores.

AR 29-30.

Mr. Grills gave no explanation for the GAF score of 39, instead merely listing the score in the diagnosis section of the report. AR 507. Mr. Grills did not indicate whether the GAF rating was based on Plaintiff's symptoms or other, unlisted functional impairments. *See* AR 507. Moreover, Plaintiff has failed to demonstrate how re-weighing Mr. Grills' opined GAF score

would change the ALJ's RFC analysis. *See Hughes*, 599 Fed. Appx. at 766 (holding any error in failing to consider the GAF score of a nurse practitioner harmless, as the RFC incorporated all credible functional limitations, and the claimant failed to identify any additional limitations the ALJ should have imposed in light of the GAF score). Consequently, even if the ALJ erred in rejecting this GAF score, Plaintiff has not shown how rejection of the GAF score caused any harm. *See Molina*, 674 F.3d at 1115-17; *see also Warner v. Colvin*, 2013 WL 6243833, at *5 (W.D. Wash. Dec. 3, 2013) (because "GAF scores are intended to account for psychosocial stressors, some of which are not relevant to eligibility for disability benefits," and the physician's opinion identified "psychosocial stressors unrelated to disability, the ALJ's interpretation of [the physician's] opinion is not inaccurate")

Accordingly, Plaintiff failed to show the ALJ committed harmful error by not discussing the November 12, 2014 treatment note, and the ALJ need not reassess this treatment note on remand. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) ("The burden is on the party claiming error to demonstrate not only the error, but also that it affected his 'substantial rights.'").

### B. Physical Limitations

Next, Plaintiff asserts the RFC should have contained greater restrictions on Plaintiff's physical abilities due to opinion evidence from Drs. Magdaleno and Hattem. Dkt. 10, pp. 9-11.

#### 1. *Dr. Magdaleno*

On two occasions, Dr. Magdaleno examined Plaintiff and provided evaluations regarding Plaintiff's physical limitations. Dr. Magdaleno conducted the first examination on April 5, 2013. AR 398-400. In this examination, Dr. Magdaleno conducted a physical examination of Plaintiff and reviewed an x-ray report from March 29, 2013. AR 399-400. With respect to the physical

examination, Dr. Magdaleno noted Plaintiff was "in obvious discomfort, walking slowly with an antalgic gait."[1] AR 399. Dr. Magdaleno observed Plaintiff had "trouble getting out of the chair during the exam." AR 399. Additionally, Dr. Magdaleno opined Plaintiff's right leg exhibited "slight weakness in plantar flexion of the ankle." AR 399. Dr. Magdaleno measured "a positive straight leg raise on the right" and wrote that Plaintiff had "numbness in her right foot with limited plantar flexion." AR 399.

Dr. Magdaleno diagnosed Plaintiff with lumbar spine strain and degenerative disc disease, and right radiculopathy. AR 399. Notably, Dr. Magdaleno observed that while an x-ray of Plaintiff's spine was "normal," his "physical exam indicate[d] more significant disease than [the] isolated [negative] spine x-ray." AR 399. Dr. Magdaleno also noted Plaintiff "was seen by a back specialist and had an MRI in August which showed a bulging disc." AR 398. Dr. Magdaleno suggested Plaintiff have another MRI conducted of her lumbar spine. AR 400.

Due to her lumbar spine conditions, Dr. Magdaleno opined Plaintiff had marked to severe limitations in her ability to stand, walk, lift, carry, handle, push, pull, reach, stoop, and crouch. AR 400. Dr. Magdaleno further found Plaintiff "[s]everely limited" in her ability to perform work in a regular, predictable manner, indicating Dr. Magdaleno found Plaintiff "[u]nable to meet the demands of sedentary work." AR 400.

During his second examination in January 2014, Dr. Magdaleno measured Plaintiff's spinal range of motion and reviewed an updated x-ray report from January 23, 2014. AR 381-86. Dr. Magdaleno diagnosed Plaintiff with degenerative disc disease of the lumbar spine with right sciatica. AR 382. Dr. Magdaleno wrote Plaintiff "has trouble walking and has an antalgic gait

---

[1] An antalgic gait is "a characteristic g[ait] resulting from pain on weightbearing in which the stance phase of g[ait] is shortened on the affected side." *Groom v. Colvin*, 2013 WL 3208591, at *8 (D. Kan. June 24, 2013) (quoting STEDMAN'S MEDICAL DICTIONARY 698 (26th ed. 1995)) (internal quotation marks omitted).

due to back pain." AR 382. Furthermore, Dr. Magdaleno observed that Plaintiff had "weakness in the right leg with plantar and dorsiflexion." AR 382. Dr. Magdaleno also determined Plaintiff had "tenderness in the lumbar spine with limited range of motion." AR 382. At the end of his examination, Dr. Magdaleno opined Plaintiff's degenerative disc disease with right sciatica caused marked limitations in her ability to stand, walk, lift, carry, handle, push, pull, reach, stoop, and crouch. AR 382.

In her decision, the ALJ discussed Dr. Magdaleno's opinions and stated:

> (1) Such an opinion is not supported by the record, including the claimant's own testimony that she is able to walk around neighborhoods and enter closed backyards. (2) Further, objective medical testing failed to reveal significant abnormalities in the claimant to warrant such extreme limitations. Due to its [in]consistency[2] with the objective medical evidence, I give this opinion little weight.

AR 29 (citations omitted) (numbering added).

First, the ALJ gave Dr. Magdaleno's opinion little weight because she found it unsupported by Plaintiff's testimony that she can "walk around neighborhoods and enter closed backyards." AR 29. An ALJ may discount a physician's findings if those findings appear inconsistent with a plaintiff's daily activities. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Regardless, an ALJ's reasoning must also be supported by substantial evidence in the record as a whole. *Bayliss*, 427 F.3d at 1214 n.1.

In a Function Report - Adult, when asked how far she can walk, Plaintiff wrote "not far." AR 265. She also reported that if she needs to rest while walking, she needs to stop for "about five minutes" before resuming walking, but she needs more time to rest "if going up or down a

---

[2] Because the ALJ gave Dr. Magdaleno's opinion "little weight," the Court presumes the ALJ's use of the term "consistency" was a typographical error and she intended to write "inconsistency." *See* AR 29.

hill, or a long distance." AR 265. At the hearing, Plaintiff testified she primarily travels by bus. AR 46. She also testified she can walk about one block on flat ground. AR 53.

Hence, the record reveals Plaintiff testified that she can walk about one block and sometimes needs to rest for about five minutes while walking. This testimony is not inconsistent with Dr. Magdaleno's opinion that Plaintiff has marked to severe limitations several areas of basic work activities. For example, Plaintiff's testimony that she can walk one block and needs to rest for five minutes at a time is not inconsistent with Dr. Magdaleno's opinion that Plaintiff is markedly impaired in her ability to stand and walk. *See* AR 399.

In his decision, the ALJ referenced Plaintiff's testimony that she "walk[s] around neighborhoods and enter closed backyards." AR 29. At the hearing, Plaintiff testified she is homeless and described how this impacts her daily life. *See* AR 58-60. Plaintiff stated that she and her girlfriend sometimes stay in the backyards of homes that are for sale. AR 58-59. She explained that her girlfriend "does the leg work and goes looking" for the backyards they can stay in. AR 60. Once her girlfriend finds a backyard, she typically returns to retrieve Plaintiff and they walk "the shortest distance" possible to get there.[3] AR 60. Plaintiff stated that on other occasions, she takes the bus or gets a ride from a friend to reach the backyards. AR 59-60.

This testimony is also not inconsistent with Dr. Magdaleno's opinions. Specifically, the context of Plaintiff's testimony reveals she stated she walks short distances, which is not inconsistent with Dr. Magdaleno's opinion that Plaintiff has marked to severe limitations in basic work activities. Therefore, the ALJ's assertion that Dr. Magdaleno's opinions is inconsistent with Plaintiff's testimony about walking is not supported by substantial evidence in the record. *See Bayliss*, 427 F.3d at 1216 (citation omitted).

---

[3] Furthermore, Plaintiff testified that if they walk to get to the backyard, Plaintiff's girlfriend carries her belongings. AR 59.

1  Second, the ALJ discounted Dr. Magdaleno's opinions because she found "objective

2  medical testing failed to reveal significant abnormalities . . . to warrant such extreme

3  limitations." AR 29 (citation omitted). The ALJ cited x-rays Dr. Magdaleno reviewed to support

4  her assertion. *See* AR 29 (citing AR 383, 401).

5  However, in addition to reviewing these x-rays, Dr. Magdaleno performed physical

6  examinations of Plaintiff at both of his examinations. *See* AR 382, 384, 399. The Ninth Circuit

7  considers physical examinations to be objective medical evidence. *Kauffman v. Berryhill*, 686

8  Fed. Appx. 517, 519 (9th Cir. 2017) (holding that contrary to the ALJ's finding, a physician's

9  opinions "were indeed based on and supported by objective medical evidence," including the

10 physician's own physical examination). In this case, at the first examination, Dr. Magdaleno

11 even noted that his "physical exam indicates more significant disease than isolated [negative]

12 spine x-ray." AR 399. This note from Dr. Magdaleno, taken with the fact that he conducted

13 physical examinations at both evaluations, indicates he based his findings on the objective testing

14 in his physical examinations. *See* AR 399. Nonetheless, the ALJ failed to acknowledge that these

15 physical examinations were objective medical tests underlying Dr. Magdaleno's findings. *See*

16 AR 29; *Kauffman*, 686 Fed. Appx. at 519.

17 Moreover, an MRI from August 2011 showed "a disk bulge towards the right with a

18 possible foraminal impingement of the L5 nerve root." *See* AR 501; *see also* AR 497, 503. Dr.

19 Magdaleno referenced this MRI in his first evaluation report. *See* AR 398. Thus, this MRI is

20 objective medical testing containing abnormalities which could support Dr. Magdaleno's opined

21 limitations. Therefore, in all, the ALJ's statement that objective medical testing failed to support

22 Dr. Magdaleno's opinion was not supported by substantial evidence in the record, as the ALJ

failed to discuss objective evidence – such as the physical examinations and MRI – that supported this opinion.

The ALJ failed to provide any specific and legitimate reason, supported by substantial evidence in the record, to discount Dr. Magdaleno's opinion. Accordingly, the ALJ erred.

Had the ALJ properly considered Dr. Magdaleno's opinion, the RFC and the hypothetical questions posed to the vocational expert ("VE") may have included additional limitations. For instance, the RFC and hypothetical questions may have reflected that Plaintiff was markedly or severely limited in her ability to stand, walk, lift, and carry, indicating a "very significant interference with the ability to," or inability to, perform these basic work activities. *See* AR 382, 399. Had the ALJ given greater weight to Dr. Magdaleno's opinion, she may have also found Plaintiff "[u]nable to meet the demands of sedentary work." *See* AR 400. As the ultimate disability decision may have changed with proper consideration of Dr. Magdaleno's opinion, the ALJ's error is not harmless and requires reversal. *See Molina*, 674 F.3d at 1115.

2. *Dr. Hattem*

Plaintiff further alleges the ALJ erred with respect to physical limitations in the RFC when considering medical opinion evidence from Dr. Hattem. Dkt. 10, pp. 9-11.

Because this matter is being remanded due to the ALJ's harmful error regarding Dr. Knapp's opinion, the Court declines to consider whether the ALJ committed harmful error in her consideration of Dr. Hattem's opinion. The Court instead directs the ALJ to reconsider Dr. Hattem's opinion as necessary on remand, in light of her treatment of Dr. Magdaleno's opinion.

1  **II.    Whether the ALJ harmfully erred in finding Plaintiff had a severe impairment of substance abuse disorder at Step Two.**

Plaintiff maintains the ALJ erred when she found Plaintiff had a severe impairment of substance abuse disorder at Step Two of the sequential evaluation process. Dkt. 10, pp. 4-5.

A social security claimant is not entitled to benefits "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Thus, where relevant, an ALJ must conduct a drug addiction and alcoholism ("DAA") analysis and determine whether a claimant's disabling limitations remain absent the use of drugs or alcohol. 20 C.F.R. §§ 404.1535, 416.935. However, an ALJ may only conduct the DAA analysis if she first finds the claimant disabled under the sequential evaluation process. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001); *see also* SSR 13-2p, 2013 WL 621536, at *4. If the ALJ thereafter finds a claimant would not be disabled if the substance abuse stopped, the claimant's substance abuse is material and benefits must be denied. *Parra v. Astrue*, 481 F.3d 742, 747-48 (9th Cir. 2007).

Here, the ALJ found Plaintiff had a severe impairment of "substance abuse disorder" at Step Two of the sequential evaluation process. AR 20. But at Step Five, the ALJ found Plaintiff to be "not disabled" because she determined Plaintiff could perform jobs existing in significant numbers in the national economy. AR 31-32. As such, the ALJ did not engage in the DAA analysis. *See* AR 31-31; *Bustamante*, 262 F.3d at 955; SSR 13-2p, 2013 WL 621536, at *4. In other words, Plaintiff has not shown her benefits were denied due to the severe impairment of substance abuse disorder. *See* AR 31-32.

The Court "will not reverse for errors that are inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1117 (citation and internal quotation marks omitted). Accordingly, even if the ALJ erred in finding Plaintiff had a severe impairment of

1 substance abuse disorder at Step Two, any error would be harmless because the ALJ did not

2 deny Plaintiff's claim due to this impairment.

3 **III. Whether this case should be remanded for an award of benefits.**

4 Lastly, Plaintiff requests the Court remand this matter for an award of benefits. Dkt. 10,

5 p. 11.

6 The Court may remand a case "either for additional evidence and findings or to award

7 benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court

8 reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the

9 agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th

10 Cir. 2004) (citations omitted). However, the Ninth Circuit created a "test for determining when

11 evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211

12 F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

16 *Smolen*, 80 F.3d at 1292.

17 The Court has determined, on remand, the ALJ must re-evaluate her treatment of medical

18 opinion evidence from Drs. Magdaleno and Hattem. Because outstanding issues remain

19 regarding the medical evidence, Plaintiff's RFC, and her ability to perform other jobs existing in

20 significant numbers in the national economy, remand for further consideration of this matter is

21 appropriate.

## CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein. The Clerk is directed to enter judgment for Plaintiff and close the case.

Dated this 3rd day of July, 2018.

David W. Christel
United States Magistrate Judge